IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| THE BANK OF NEW YORK MELLON | : |
|  | : |
| v. | : Civil Action No. DKC 14-2914 |
|  | : |
| HOLLY G. ASHLEY, et al. | : |
|  | : |

## MEMORANDUM OPINION

Presently pending and ready for resolution in this priority of liens case are: (1) a motion for partial summary judgment filed by Defendants United States Department of the Treasury and Internal Revenue Service (collectively, the "United States") (ECF No. 54); and (2) a cross motion for partial summary judgment filed by Plaintiff Bank of New York Mellon, f/k/a the Bank of New York, as Trustee for the Holders of GE-WMC Asset-Backed Pass-Through Certificates, Series 2005-1 ("BONY") (ECF No. 57). The issues have been briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be granted in part and denied in part.

## I. Background

### A. Factual Background

This case involves the question of the priority of liens in the real property known as 2902 Matapeake Drive, Upper Marlboro, Maryland (the "Property"). Pursuant to a deed dated October 5,

1999, the Property was conveyed by recorded deed to Defendant Holly G. Smith, n/k/a Holly G. Ashley. (ECF No. 57-3). Pursuant to a recorded deed dated November 24, 2003, Mrs. Ashley conveyed the Property to herself and Defendant Michael Ashley, her husband, as tenants by the entirety. (ECF No. 57-4).

On December 22, 2004, Mr. and Mrs. Ashley refinanced their mortgage on the Property using proceeds obtained from a loan granted by WMC Mortgage in the amount of $400,000 (the "Prior Loan") in exchange for a deed of trust to the Property (the "Prior DOT"). (*See* ECF No. 63-2). Both Mr. and Mrs. Ashley were signatories to the Prior Loan, which paid off an existing $337,500.00 mortgage lien; both Mr. and Mrs. Ashley were identified as grantors on the Prior DOT; and both Mr. and Mrs. Ashley executed the Prior DOT. The Prior DOT was recorded in the land records of Prince George's County on July 7, 2005. (*Id.*). On July 5, 2005, Mr. Ashley applied for and was granted a refinance loan from WMC Mortgage in the amount of $475,000 (the "Subject Loan"). (ECF No. 63-4). The Subject Loan was funded and a closing was conducted in the ordinary course of the loan. Disbursement of the proceeds went to pay off the Prior DOT, in the amount of $405,450.06. (ECF No. 57-6). Mr. Ashley – but not Mrs. Ashley – was identified as a grantor on the corresponding deed of trust (the "Subject DOT"), which Mr. Ashley executed on July 14. (ECF No. 63-3). The Subject DOT

2

was recorded on December 21, 2005.  (*Id.* at 1).  BONY is the successor in interest to WMC Mortgage and, accordingly, the current holder of the Subject Loan and beneficiary of the Subject DOT.[1]  (ECF No. 43 ¶ 21).

On June 5, 2007, Mr. and Mrs. Ashley together conveyed the Property to the Ashley Family Trust by recorded deed (the "Trust DOT").  (ECF No. 57-10).  Under the terms of the Ashley Family Trust, both Mr. Ashley and Mrs. Ashley held an undivided 50% interest in the Property.  (ECF No. 57-11 at 8-9).  On November 5, 2012, the United States filed Notices of Federal Tax Liens in the amount of $428,227.50, noticed on October 11, 2012 and assessed on December 12, 2011, as to Mr. and Mrs. Ashley.  (ECF No. 54-5).  Finally, on December 21, 2012, the Ashley Family Trust conveyed the Property to Mr. Ashley by recorded quitclaim deed.  (ECF No. 57-12).

**B.   Procedural Background**

BONY filed this action requesting that the court determine the priority of liens against the Property on September 12, 2014.  (ECF No. 1).  The operative amended complaint was filed on October 29, 2015.  (ECF No. 43).  The six-count amended complaint asserts claims against four groups of interested parties:  (1) Mr. and Mrs. Ashley; (2) CitiFinancial, Trustee

---

[1] All references to BONY refer either to WMC Mortgage at the relevant time or to Plaintiff BONY when it was the successor of WMC Mortgage.

Nancy J. Liberto, and Trustee Betty Lou Crumrine (concerning a now-discharged CitiFinancial deed of trust dated December 18, 2000 (the "CitiFinancial DOT")); (3) the United States; and (4) the State of Maryland, Comptroller of Maryland ("Maryland Comptroller"). BONY seeks: declaratory relief determining that it holds a first-priority lien on the Property (Count I); a determination that it holds a first-priority lien by reason of equitable subrogation (Count II); to use quiet title to determine the owner of the Property and hold that the Subject DOT constitutes a valid first-priority lien (Count III); to obtain a decree reforming the Subject DOT to include the signature of Mrs. Ashley (Count IV); to obtain a constructive trust in its favor (Count V); and to obtain an equitable mortgage against the Property as of July 13, 2005 (Count VI). (ECF No. 43).

The Clerk of Court entered default against Defendants CitiFinancial, Trustee Nancy J. Liberto, and Trustee Betty Lou Crumrine for their failure to plead or otherwise defend as directed in the summonses and as provided by the Federal Rules of Civil Procedure. (ECF Nos. 12; 14; 16). Accordingly, CitiFinancial and its trustees do not contest that the CitiFinancial DOT has been paid and satisfied and that any error in its release does not affect BONY's interest. (*See* ECF Nos. 43 ¶ 4; 53, at 6). The court also previously granted a joint

motion establishing the priority of liens as to the Maryland Comptroller, but ordered that the order of judgment would not be entered until the entire case was resolved. (ECF No. 53).[2]

Plaintiff previously filed a motion for consent judgment as to Mr. and Mrs. Ashley (ECF No. 28), which the United States opposed (ECF No. 31). The consent motion, *inter alia*, would have provided that the Subject DOT is equitably subrogated to the position and priority of the Prior DOT and the CitiFinancial DOT, and that Mr. and Mrs. Ashley intended for the Subject DOT to be a first-priority deed of trust against the Property. (ECF No. 28-1, at 2). On March 14, 2016, the court denied the consent motion without prejudice to its renewal because its resolution would have affected the priority of the United States' tax liens. Mr. and Mrs. Ashley answered the amended complaint on June 23. (ECF No. 72). In their answer, they request that the court enter judgment in favor of BONY

---

[2] The State of Maryland issued state tax liens against Mr. and Mrs. Ashley in the amounts of $127,711 and $19,942. As previously noted, there is a discrepancy concerning the dates on which the state tax liens were issued. (ECF No. 53, at 7 n.2). The Maryland Comptroller agrees with BONY that the Subject DOT is senior to the state tax liens against Mr. Ashley, pursuant to the doctrines of equitable subrogation and after-acquired property, and that the state tax liens against Mrs. Ashley did not attach to the Property because she had previously conveyed away her interest at the time of their filing. (*See* ECF No. 32). The United States opposed the joint motion, but represented that the Maryland Comptroller's concession of lien priority did not affect the lien priority of the United States. (ECF No. 52, at 3).

establishing that the Subject DOT is the first-priority lien on the property. (*Id.*).

The United States answered the amended complaint on December 21, 2015 (ECF No. 47), and filed the instant motion for partial summary judgment on March 21, 2016 (ECF No. 54). Plaintiff filed its cross motion for partial summary judgment on April 20. (ECF No. 57). The United States filed a response in opposition and reply in support of its motion (ECF No. 63), and Plaintiff replied (ECF No. 68).

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. If the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof,

6

however, then there is no genuine dispute of material fact. *Celotex*, 477 U.S. at 322-23.   Therefore, on those issues on which the nonmoving party has the burden of proof, it is that party's responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).   "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).   In other words, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted); *see Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).   Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993).   At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *Scott v. Harris,* 550 U.S. 372, 378 (2007); *Emmett,* 532 F.3d at 297.

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 354 (4th Cir. 2011). The court must deny both motions if it finds there is a genuine dispute of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright, et al., *Federal Practice & Procedure* § 2720 (3d ed. 1998).

The United States moves for summary judgment against BONY on the ground that it has a first-priority lien senior to the Subject DOT against 50% of the Property. (ECF No. 54). BONY opposes the United States' motion and cross moves for summary judgment on Count II (Equitable Subrogation), Count V (Constructive Trust), and Count VI (Equitable Mortgage) of the amended complaint. (ECF No. 57). BONY argues that it enjoys a first-priority lien against 50% of the Property pursuant to the after-acquired property doctrine, and in addition, that it should enjoy a first-priority lien as the remaining 50% of the Property under equitable doctrines.

## III. Analysis

Federal law governs the priority of federal tax liens, which are created pursuant to 26 U.S.C. § 6321 *et seq.* *Aquilino*

*v. United States*, 363 U.S. 509, 512 (1960); *Collier v. United States*, 432 F.3d 300, 304 (4th Cir. 2005). "The threshold question . . . is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach," and "both federal and state courts must look to state law" to answer this question. *Aquilino*, 363 U.S. at 512–513. If the taxpayer had property or property rights to which the tax lien could attach, then priority must be determined under federal law. "Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.'" *United States v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. New Britain*, 347 U.S. 81, 85 (1954)).

Accordingly, federal law provides that "[t]he lien imposed by [§] 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." 26 U.S.C. § 6323(a). The United States Court of Appeals for the Fourth Circuit has clarified that, "if an asserted claim is a 'security interest' within the meaning of the Tax Code, it takes priority if it is created before the government properly files its tax liens." *United States v. 3809 Crain Ltd. P'ship*, 884 F.2d 138,

142 (4th Cir. 1989).   Section 6323(h)(1) defines a "security interest" as any interest in property acquired by contract for the purpose of securing payment of an obligation.   There is a two-part inquiry to determine whether a security interest exists:

> A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C. § 6323(h)(1); *see also 3809 Crain Ltd. P'ship*, 884 F.2d at 142.

The material facts in this case are not in dispute.   The Subject DOT, executed on July 13, 2005, predates the federal tax liens assessed in 2011 and noticed in 2012.   The relevant question is whether BONY was the holder of a protected "security interest" prior to the assessment of the tax liens.   The second part of this inquiry is clear:   It is undisputed that BONY paid "money or money's worth" for the Property in issuing the Subject Loan, and so has satisfied part (B) above.   The analysis under part (A) requires examining local law to determine the time at which BONY's interest became protected.   The parties agree that BONY has a senior security interest against one-half of the real property and that the federal tax liens have first priority

against the other half of the property, absent equitable relief,
but disagree as to the reason for this priority.

### A.   Mr. Ashley's 50% Interest in the Property

The United States appears to concede that BONY had a
protected security interest as to Mr. Ashley's 50% interest in
the Property when he executed the Subject DOT.  (ECF No. 54-1,
at 5).  BONY, however, concedes that it did *not* have a protected
security interest upon the execution of the Subject DOT, and
instead argues that its interest became protected as to Mr.
Ashley's 50% of the Property upon the Ashleys' transfer of the
Property to the Family Trust.  (ECF No. 68, at 7 n.2).

Mr. and Mrs. Ashley held the Property as tenants by the
entirety when Mr. Ashley executed the Subject DOT.  "Although
some states have either abolished or significantly altered the
estate of tenancy by the entireties, Maryland retains the estate
in its traditional form."  *Bruce v. Dyer*, 309 Md. 421, 426
(1987) (citation omitted).

> [T]he tenancy by the entireties estate as it
> currently exists in Maryland has the
> following pertinent incidents: the husband
> and wife take the tenancy by the entireties
> property not by moieties but by the
> entirety; each spouse has an equal right to
> income derived from the tenancy by the
> entireties property but no right to compel
> an accounting during marriage, *see Howard v.
> Howard*, 245 Md. 182, 185 (1967); and neither
> spouse may lease, dispose of or encumber
> land held as tenants by the entireties
> without the consent of the other.

*Arbesman v. Winer*, 298 Md. 282, 290 (1983).   A deed of trust must list all grantors under Maryland law, Md. Code, Real Prop. § 4-101(a)(1), and Mrs. Ashley was not listed as a grantor on the Subject DOT.   The Subject DOT was therefore defective to establish any lien at the time of its execution.[3]

The Ashley Family Trust, a revocable living trust, provided that Mr. and Mrs. Ashley "shall each equitably own an undivided one-half interest in all property subject to the Trust." (ECF No. 57-11, at 8).   A tenancy by the entireties may be terminated through joint action of the spouses, and spouses may, by acting jointly, grant any interest in property held in tenancy by the entirety to themselves in joint tenancy or tenancy in common. Md. Code, Real Prop. § 4-108(b); *Bruce*, 309 Md. at 428-29.   The Ashleys acted jointly in executing the Trust DOT, and in doing so, chose to forgo the protections and limitations of ownership as tenants by the entirety.   Upon the execution of the Trust DOT on June 5, 2007, each spouse owned an undivided one-half interest in the Property as tenants in common, and each could encumber the Property without the other.   BONY's security interest then became protected under local law pursuant to the

---

[3]   The United States recognizes this principle in its response in support of its motion. (*See* ECF No. 63, at 6 ("[U]nder Maryland law, one 'co-tenant of a tenancy by the entireties . . . individually holds no legal power to convey by deed of trust a title interest in the property to secure the mortgage debt.'" (quoting *In re Wilkinson*, 186 B.R. 186, 190 (Bankr.D.Md. 1995)))).

after-acquired property doctrine as to the 50% of the Property that Mr. Ashley could encumber on June 5, 2007. *See Columbia Carbon Co. v. Knight*, 207 Md. 203, 210 (1955) ("The grantor who executes a deed purporting to convey land to which he has no title or to which he has a defective title at the time of conveyance will not be permitted, when he afterwards acquires a good title to the land, to claim in opposition to his deed. . . . [T]he title vests by operation of law or by inurement as soon as it is acquired by the grantor[.]"). As Mr. Ashley's acquisition preceded the federal tax liens, BONY has a first priority security interest against 50% of the Property that is senior to the federal tax liens.

### B.   Mrs. Ashley's 50% Interest in the Property

The question of when BONY's security interest became protected then remains as to the other 50% of the Property. The parties agree that the federal tax liens have priority over BONY's security interest, but again disagree as to the reason. The United States appears to argue that its tax liens could not attach while the Property was held in the Ashley Family Trust. (ECF No. 54-1, at 5-6). Whether the taxpayer had property or rights to property to which the tax lien could attach is a threshold question. The United States apparently contends that Mr. and Mrs. Ashley did not have property rights to which the tax liens could attach when its tax liens were filed, which was

13

at the time that the Property was held in the Ashley Family Trust.   Accordingly, it argues that the tax liens and BONY's security interest attached simultaneously when the Property was transferred from the Family Trust to Mr. Ashley on December 12, 2012, and that, under federal law, federal tax liens receive priority over a security interest that attaches simultaneously. A revocable living trust cannot, however, be used to evade federal tax liens.   Therefore, the tax liens attached when they were assessed.   *See United States v. Bond*, 279 F.2d 837, 841 (4th Cir. 1960).

BONY, however, could not have a protected security interest in the entire Property, absent equitable considerations, until Mr. Ashley acquired the remaining 50% interest on December 21, 2012, when the Ashleys transferred the Property from the Ashley Family Trust to Mr. Ashley individually.   At that time, Mr. Ashley had the right to encumber the entirety of the Property, as he had purported in executing the Subject DOT in 2005, and BONY's security interest became protected pursuant to the after-acquired property doctrine.   As the federal tax liens had been assessed by that time, however, the federal tax liens were first in time and have a senior interest against 50% of the real property.   Accordingly, BONY and the United States each would have priority against 50% of the Property, absent the application of equitable relief.

## C.   Equitable Relief

BONY seeks a judgment that it is entitled to first priority for the first $405,450.06 of the Subject Loan under the doctrine of equitable subrogation (Count II).  In addition, BONY contends that the entire amount of the Subject Loan is a first-priority lien against the Property under the doctrines of constructive trust (Count V) or equitable mortgage (Count VI).

### 1.   Equitable Subrogation

Count II of the amended complaint seeks a determination that BONY holds a first-priority lien by reason of equitable subrogation.  (ECF No. 43 ¶¶ 28-30).  In its motion for partial summary judgment, the United States initially argued that equitable subrogation relied on a relation back theory and was barred by Treasury Regulation § 301.6323(h)-1(a)(2).  (ECF No. 54-1, at 6-7).  As BONY noted in its cross motion and opposition, however, subrogation is permitted under 26 U.S.C. § 6323(i)(2), which provides that, "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321[.]"  In its reply, the United States now argues that equitable

subrogation is not available under local law. (ECF No. 63, at 3).[4]

Maryland recognizes conventional, statutory, and legal subrogation, *see Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 311 (2007), although only legal subrogation is at issue here. "Broadly defined, subrogation is the substitution of one person in the place of another with reference to a lawful claim or right." *Rinn v. First Union Nat'l Bank of Md.*, 176 B.R. 401, 407-08 (D.Md. 1995). "The party subrogated acquires all rights, securities, and remedies the creditor has against the debtor and is regarded as constituting one and the same person with the creditor whom he succeeds." *Id.* Equitable subrogation requires that: (1) there is a debt which a party other than the subrogee owes, and (2) the subrogee paid the debtor's loan to protect his or her own rights, not as a volunteer. *Fishman v. Murphy*, 433 Md. 534, 554 (2013) (citing *Hill*, 402 Md. at 304).

---

[4] The United States also briefly argues in a footnote to its reply that, because the statute allows subrogation "[w]here, under local law, one person is subrogated to the rights of *another* with respect to a lien or interest," 26 U.S.C. § 6323(i)(2) (emphasis added), it does not permit subrogation where a lender seeks to be subrogated to rights it previously held *itself*. (ECF No. 63, at 3 n.3). The United States acknowledges, however, that Maryland law does allow subrogation in this circumstance (*id.* (citing *In re Schubert*, 437 B.R. 787, 794 (Bankr.D.Md. 2010))), and offers no support for its interpretation. The statute allows subrogation where permitted by local law, and local law permits subrogation where a person seeks to be subrogated to that person's previous rights. *Schubert*, 437 B.R. at 793-94.

It is undisputed that the Ashleys owed a debt on the Prior Loan, which was secured by a valid, first-priority mortgage on the Property at that time.  It is also undisputed that proceeds from the Subject Loan in the amount of $405,450.06 were paid to discharge the Prior Loan, pursuant to Mr. Ashley's instruction and in reliance upon obtaining security equivalent to the discharged lien.  (*See* ECF Nos. 63-2; 57-8).  A subrogee "is not a volunteer . . . when he pays the debt at the . . . request of the person whose liability he discharges," where there is an understanding or agreement that the benefit is not a gift. *Springham v. Kordek*, 55 Md.App. 449, 455 (1983); *accord Milholland v. Tiffany*, 64 Md. 455, 455 (1886) ("Where money has been loaned upon a defective mortgage for the purpose of discharging a prior valid incumbrance, and has actually been so applied, the mortgagee may be subrogated to the rights of the prior incumbrancer who he has thus satisfied, there being no intervening incumbrances." (quoting Sheld. Subs. § 8)).  BONY paid the Ashleys' debt to protect its own interests and not as a volunteer.

The United States argues that equitable subrogation requires a mistake or fraud, and is unavailable where a subrogee had "actual notice" that its interest was not protected, arguing that here "there was no misreading of the land records, there was no failure to discover an intervening lien, there was no

17

mistaken release of a prior lien, there was no intervening creditor, and the Bank had actual knowledge of Mrs. Ashley's interest in the property." (ECF No. 63, at 4).   In the context of mortgage refinancing, the Court of Appeals of Maryland has noted that:

> Where a lender has advanced money for the purpose of discharging a prior encumbrance in reliance upon obtaining security equivalent to the discharged lien, and his money is so used, the majority and preferable rule is that if he did so in ignorance of junior liens or other interests he will be subrogated to the prior lien. Although stressed in some cases as an objection to relief, neither negligence nor constructive notice should be material.

*G.E. Capital Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 231–32 (1995) (quoting G.E. Osborne, *Handbook on the Law of Mortgages* § 282, at 570 (2$^d$ ed. 1970)).   While the instant case involves priority among lienholders, this issue does not.   The federal tax liens were assessed six years after the Subject DOT was executed, and there is no evidence of an intervening lien between the execution of the Prior DOT in December 2004 and the Subject DOT in July 2005.   The cases on which the United States relies concern actual knowledge of an intervening lien, not knowledge of the invalidity of the security instrument.   *See Fishman*, 433 Md. at 556; *Levenson*, 338 Md. at 231–32.   Moreover, the cases concerning knowledge of an intervening lien demonstrate the strong public policy favoring subrogation,

allowing subrogation even where the lender had constructive notice of an intervening lien or was negligent. *See id.; see also Rinn*, 176 B.R. at 408 (noting that "subrogation is a highly favored doctrine and expansively applied"). BONY's constructive or actual knowledge of the invalidity of its security instrument is immaterial to equitable subrogation.

It is clear that the elements of legal subrogation under Maryland law are satisfied here, and BONY is entitled to be subrogated to its rights under the prior valid mortgage that was discharged with the proceeds of the invalid mortgage. *See Bierman v. Hunter*, 190 Md.App. 250, 257 (2010), *abrogation on other grounds recognized by Thomas v. Nadel*, 427 Md. 441 (2012). It can be subrogated only to the rights it possessed as predecessor, however. *Id.* This result causes no harm to the interests of the United States, whose tax liens would have been second in priority to BONY's interest secured by the Prior DOT, had it not been discharged by the Subject Loan. It also prevents the unjust enrichment of the United States, which would otherwise benefit from BONY's mistake.[5] *See Fishman*, 433 Md. at 556-57. Subrogation places the parties in the same positions they would have held had the 2005 refinance transaction never

---

[5] The United States argues that a *bona fide* purchaser for value cannot be unjustly enriched (ECF No. 63, at 6 n.5), but the United States is equivalent to a judgment lien creditor, not a *bona fide* purchaser, *In re Restivo Auto Body, Inc.*, 772 F.3d 168, 178 (4th Cir. 2014).

occurred.   For the foregoing reasons, BONY's motion for summary judgment on Count II will be granted and an equitable lien in the amount of $405,450.06 will be imposed in favor of BONY.

## 2. Constructive Trust

Count V of the amended complaint requests the imposition of a constructive trust in favor of BONY on the terms of the Subject DOT with priority on and against the Property as of the date of its execution.  (ECF No. 43 ¶¶ 40-44).

> A constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property. . . . The purpose of the remedy is to prevent the unjust enrichment of the holder of the property. *Siemiesz v. Amend*, 237 Md. 438 (1965).

*Wimmer v. Wimmer*, 287 Md. 663, 668 (1980).   BONY alleged in the amended complaint that the Ashleys would be unjustly enriched if they were permitted to retain the Property unencumbered, and also that the "other lien holders would be unjustly enriched by advancing in lien position by virtue of the lien payoffs made through the Subject Loan."  (ECF No. 43 ¶ 42).   In the instant motions, the parties argue only whether the United States would be unjustly enriched absent a constructive trust.[6]   The United

---

[6] The United States also argues that a constructive trust may not be imposed because it did not commit fraud, misrepresentation, or any other wrongful act to obtain its lien position.  (ECF No. 63, at 6-7).   A constructive trust is

States is not, however, the holder of the property.  Imposition of a constructive trust would not be appropriate to resolve the priority of liens between BONY and the United States, and BONY has not shown here that it is entitled to the imposition of a constructive trust on the terms of the Subject DOT.

Even if BONY were entitled to the imposition of a constructive trust, however, a constructive trust could not prime the federal tax liens.  Although "[o]rdinarily, a constructive trust must be established from circumstances surrounding the inception of the transaction and not from subsequent events," *Wimmer*, 287 Md. at 672 (citing *Annapolis v. W. Anna. Fire & Imp. Co.*, 264 Md. 729, 737 (1972)), a constructive trust is an equitable remedy.  Subsequent events may be relevant only to the extent that they reflect the intent of the parties at the time of the transaction for the establishment of a constructive trust, but the constructive trust itself is not established before it is imposed by a court.  Accordingly, a constructive trust is not choate prior to the entry of judgment.  *See Blachy v. Butcher*, 221 F.3d 896, 904-06 (6th Cir. 2000) (distinguishing cases that "fail to explain how a constructive trust that is judicially imposed after the filing

---

available to redress unjust enrichment, however, and the imposition of a constructive trust "is no longer limited to misconduct cases."  *Wash. Suburban Sanitary Comm'n v. Utils., Inc. of Md.*, 365 Md. 1, 39 (2001).

of a federal tax lien can retroactively meet the federal standard of 'choateness,' thus priming the lien" and holding that "a judicially-created equitable remedy cannot be applied retroactively to defeat a choate federal tax lien"). Additionally, if a constructive trust could relate back to the date of the transaction under Maryland law, it would be barred by § 301.6323(h)-1(a)(2). BONY relies on *Restivo*, in which the Fourth Circuit held that a lender acquired a protected security interest prior to notice of federal tax liens under the Maryland doctrine of equitable conversion. 772 F.3d at 177 (holding that "a lender's equitable interest in *secured* property is superior to the interest of subsequent judgment lienholders" (emphasis added) (citing *Taylor Elec. Co. v. First Mariner Bank*, 191 Md.App. 482, 503 (2010)); *accord Taylor Elec. Co.*, 191 Md.App. at 504 ("The overwhelming weight of authority is that once a *bona fide* purchaser or lender for value acquires title by way of execution of a contract for sale or *valid* mortgage, the purchaser or mortgagee takes title free and clear of any subsequent lien." (emphasis added)). Here, however, BONY did not have a valid mortgage or a protected security interest against the entire Property when the tax liens were assessed. As discussed above, BONY had a protected interest only as to Mr. Ashley's 50% interest in the Property, and recognition of that interest does not require the imposition of a constructive

22

trust.    Finally,   considering   the   equities,   while   it   may   be
proper   to   impose   a   constructive   trust   between   BONY   and   the
Ashleys,   the   United   States   is   without   fault   here,   and   it   would
be   unfair   to   subordinate   its   choate   tax   lien   by   retroactively
creating   a   constructive   trust   in   favor   of   BONY.    *See Blachy*, 221
F.3d   at   906.    Accordingly,   BONY's   motion   for   summary   judgment   on
Count   V   will   be   denied,   and   the   court   will   hold   that   the
imposition   of   a   constructive   trust   would   not   affect   the   first
priority   of   the   federal   tax   liens   against   50%   of   the   Property.

### D.   Equitable Mortgage

BONY   also   argues   that   it   is   entitled   to   an   equitable
mortgage   enforceable   on   both   Mr.   and   Mrs.   Ashley,   despite   the
absence   of   Mrs.   Ashley's   name   and   signature   as   a   grantor   on   the
Subject   DOT,   as   of   the   date   of   the   Subject   DOT.   (ECF   No.   57-1,
at   9-11).

> It   is   well   settled   in   this   State,   since
> *Dyson v. Simmons*,   48   Md.   207   (1878),   that
> generally   where   an   instrument   intended   to
> operate   as   a   mortgage   fails   as   a   legal
> mortgage   because   of   some   defect   or   infirmity
> in   its   execution,   an   equitable   mortgage   may
> be   recognized,   with   priority   over   judgments
> subsequently   obtained.    *See also Jackson v.
> County Trust Co.*,   176   Md.   505   (1939);   *W.
> Nat'l Bank of Balt. v. Nat'l Union Bank*,   91
> Md.   613   (1900);   *cf. Berman v. Berman*,   193
> Md.   614   (1949).    The   theory   underlying   the
> equitable   mortgage   doctrine   is   that   an
> instrument   which   is   intended   to   charge
> certain   lands,   even   though   defectively
> executed,   is   nevertheless   considered   to   be
> evidence   of   an   agreement   to   convey,   and   a

23

> court of equity should enforce the
> obligation despite the technical defects in
> the instrument.

*Lubin v. Klein*, 232 Md. 369, 371 (1963). "[A] defective instrument should be treated as an equitable mortgage when the intent of the parties is obvious." *Taylor Elec. Co.*, 191 Md.App. at 498 (citing *W. Nat'l Bank of Balt.*, 91 Md. at 621). BONY has not shown that it is entitled to an equitable mortgage under local law.[7]

---

[7] Although it is not necessary to decide here whether an equitable mortgage is established upon payment because the doctrine of equitable mortgage does not apply, the application of state equitable principles to create an equitable mortgage may also be barred by 26 C.F.R. § 301.6323(h)-1(a)(2). The Fourth Circuit noted in *Restivo* that:

> federal courts have often invoked equitable principles
> of state law when applying § 6323(h)(1)(A). *See* [*In re*] *Haas,* 31 F.3d [1081,] 1091 [(11th Cir. 1994)]
> (holding that state equitable principles would
> retroactively reinstate an erroneously released
> mortgage but that those principles were nonetheless
> barred by Treas. Reg. § 301. 6323(h)-1(a)(2)'s
> prohibition against relation back); *Regions Bank* [*v. United States*, No. 3:12-cv-21], 2013 WL 635615, at *2-3 [(E.D.Tenn. Feb. 20, 2013)] (same); *Bank of N.Y. Mellon Trust* [*v. Phipps*,] No. L-10-1271], 2011 WL 1322393, at *2-3 [(D.Md. Apr. 1, 2011)] (assuming
> arguendo that state equitable principles would
> retroactively impose an equitable mortgage where a
> deed of trust accidentally omitted the name of a
> purchaser, but holding that those principles were
> barred by Treas. Reg. § 301.6323(h)-1(a)(2)).").

772 F.3d at 180. Thus, even if judgment could be entered for BONY on its claim for an equitable mortgage, the equitable relief would affect only its relationship with the other defendants and not the priority of its security interest in relation to the federal tax liens.

Maryland law provides:  "Any deed containing the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted, is sufficient, if executed, acknowledged, and, where required, recorded."  Md. Code, Real Prop. §4-101(a)(1).  It is undisputed that the Subject DOT did not contain Mrs. Ashley's name as a grantor and was not executed by her.  BONY argues that this exclusion is a technical defect, and that an equitable mortgage may be recognized.  It relies on *Taylor Electric Co.*, in which the Court of Special Appeals of Maryland established an equitable mortgage where the deed of trust did not include the required property description because the intent of the parties to convey the property via the deed of trust was obvious.  191 Md.App. at 499-501.  An equitable mortgage cannot be created where the person who executed the mortgage did not have the legal power to do so, however.  *Lubin*, 232 Md. at 372 ("[T]he equitable mortgage doctrine must be limited to situations where the person who executed the mortgage had the legal power to do so, and cannot be extended to cure mortgages which have been executed by persons with no *legal* authority."); *see also Wilkinson*, 186 B.R. at 189.  As previously noted, BONY does not dispute that at the time Mr. Ashley executed the Subject DOT, he held the Property in tenancy by the entirety with Mrs. Ashley and did not have the

power to convey an interest in or encumber the Property alone. Accordingly, Mr. Ashley did not have the legal power to execute the Subject DOT and an equitable mortgage cannot be created. BONY's motion for summary judgment on its equitable mortgage claim will be denied.

## IV.  Conclusion

For the foregoing reasons, the motions for partial summary judgment filed by BONY and the United States will be denied in part and granted in part.  BONY will be subrogated to its prior valid mortgage.  Accordingly, the Property is subjected to a first-priority equitable lien of $405,450.06 in favor of BONY. To the extent the value of the property exceeds this amount, the United States' federal tax lien of $428,227.50 against Mrs. Ashley is next in priority as to her former 50% interest in the Property.  After its first-priority equitable lien of $405,450.06, BONY has no interest in Mrs. Ashley's former 50% interest in the Property.  As to Mr. Ashley's former 50% interest in the Property, the $69,549.94 remainder of BONY's $475,000 lien is second in priority, and the United States' federal tax lien of $428,227.50 against Mr. Ashley would be third in priority.  A separate order will follow.

_____
            /s/
DEBORAH K. CHASANOW
United States District Judge
