IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE BANK OF NEW YORK MELLON :

    v. : Civil Action No. DKC 14-2914

HOLLY G. ASHLEY, et al. :

**MEMORANDUM OPINION**

Before proceeding with this action, the precise nature of the claims, and the basis for this court's jurisdiction, must be clarified. Plaintiff's four count complaint does not recite a basis for jurisdiction, in violation of Fed.R.Civ.P. 8(a)(1). The Civil Cover Sheet reflects that a United States government defendant is the "Basis of Jurisdiction" and, where the form calls for a citation to the civil statute under which suit is filed, the words "quiet title," with no code section, are written in. (ECF No. 1-1). The complaint contains claims for (I) declaratory judgment, (II) equitable subrogation, (III) quiet title, and (IV) breach of contract. No count refers to any statute.

After years of litigation, and seeming resolution of most, if not all, of the issues generated by the property records and various liens, the case appeared to be ready for final judgment. In trying to prepare that judgment, the court raised the issue

of subject matter jurisdiction *sua sponte* and issued an order directing Plaintiff Bank of New York Mellon ("Plaintiff") to file a memorandum supporting the court's exercise of jurisdiction. (ECF No. 82). Plaintiff filed a memorandum, Defendant the United States Department of the Treasury and Internal Revenue Services (collectively, the "United States") responded, and Plaintiff replied. (ECF Nos. 83, 88, 93). The issue has been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the case will be dismissed.

**I. Background**

This case was brought to determine the priority of liens on the real property known as 2902 Matapeake Drive, Upper Marlboro, Maryland (the "Property"). Pursuant to a deed dated October 5, 1999, the Property was conveyed by recorded deed to Defendant Holly G. Smith, n/k/a Holly G. Ashley. (ECF No. 57-3). Pursuant to a recorded deed dated November 24, 2003, Mrs. Ashley conveyed the Property to herself and Defendant Michael Ashley, her husband, as tenants by the entirety. (ECF No. 57-4).

On December 22, 2004, Mr. and Mrs. Ashley refinanced their mortgage on the Property using proceeds obtained from a loan granted by WMC Mortgage in the amount of $400,000 (the "Prior Loan") in exchange for a deed of trust to the Property (the "Prior DOT"). (*See* ECF No. 63-2). Both Mr. and Mrs. Ashley

2

were signatories to the Prior Loan, which paid off an existing $337,500.00 mortgage lien; both Mr. and Mrs. Ashley were identified as grantors on the Prior DOT; and both Mr. and Mrs. Ashley executed the Prior DOT. The Prior DOT was recorded in the land records of Prince George's County on July 7, 2005. (*Id.*). On July 5, 2005, Mr. Ashley applied for and was granted a refinance loan from WMC Mortgage in the amount of $475,000 (the "Subject Loan"). (ECF No. 63-4). The Subject Loan was funded and a closing was conducted in the ordinary course of the loan. Disbursement of the proceeds went to pay off the Prior DOT, in the amount of $405,450.06. (ECF No. 57-6). Mr. Ashley – but not Mrs. Ashley – was identified as a grantor on the corresponding deed of trust (the "Subject DOT"), which Mr. Ashley executed on July 14. (ECF No. 63-3). The Subject DOT was recorded on December 21. (*Id.* at 1). BONY is the successor in interest to WMC Mortgage and, accordingly, the current holder of the Subject Loan and beneficiary of the Subject DOT.[1] (ECF No. 43 ¶ 21).

On June 5, 2007, Mr. and Mrs. Ashley together conveyed the Property to the Ashley Family Trust by recorded deed (the "Trust DOT"). (ECF No. 57-10). Under the terms of the Ashley Family Trust, both Mr. Ashley and Mrs. Ashley held an undivided 50%

---

[1] All references to BONY refer either to WMC Mortgage at the relevant time or to Plaintiff BONY when it was the successor of WMC Mortgage.

interest in the Property.  (ECF No. 57-11, at 8-9).  On November 5, 2012, the United States filed Notices of Federal Tax Liens in the amount of $428,227.50, noticed on October 11, 2012 and assessed on December 12, 2011, as to Mr. and Mrs. Ashley.  (ECF No. 54-5).  Finally, on December 21, 2012, the Ashley Family Trust conveyed the Property to Mr. Ashley by recorded quitclaim deed.  (ECF No. 57-12).

BONY filed this action requesting that the court determine the priority of liens against the Property on September 12, 2014.  (ECF No. 1).  The operative amended complaint was filed on October 29, 2015.  (ECF No. 43).  The six-count amended complaint asserts claims against four groups of interested parties:  (1) Mr. and Mrs. Ashley; (2) CitiFinancial, Trustee Nancy J. Liberto, and Trustee Betty Lou Crumrine (concerning a now-discharged CitiFinancial deed of trust dated December 18, 2000 (the "CitiFinancial DOT")); (3) the United States; and (4) the State of Maryland, Comptroller of Maryland ("Maryland Comptroller").  BONY seeks: declaratory relief determining that it holds a first-priority lien on the Property (Count I); a determination that it holds a first-priority lien by reason of equitable subrogation (Count II); to use quiet title to determine the owner of the Property and hold that the Subject DOT constitutes a valid first-priority lien (Count III); to obtain a decree reforming the Subject DOT to include the

signature of Mrs. Ashley (Count IV); to obtain a constructive trust in its favor (Count V); and to obtain an equitable mortgage against the Property as of July 13, 2005 (Count VI). (ECF No. 43).

The Clerk of Court entered default against Defendants CitiFinancial, Trustee Nancy J. Liberto, and Trustee Betty Lou Crumrine for their failure to plead or otherwise defend as directed in the summonses and as provided by the Federal Rules of Civil Procedure. (ECF Nos. 12; 14; 16). Accordingly, CitiFinancial and its trustees do not contest that the CitiFinancial DOT has been paid and satisfied and that any error in its release does not affect BONY's interest. (*See* ECF Nos. 43 ¶ 4; 53, at 6). The court also previously granted a joint motion establishing the priority of liens as to the Maryland Comptroller, but ordered that the order of judgment would not be entered until the entire case was resolved. (ECF No. 53).[2]

---

[2] The State of Maryland issued state tax liens against Mr. and Mrs. Ashley in the amounts of $127,711 and $19,942. As previously noted, there is a discrepancy concerning the dates on which the state tax liens were issued. (ECF No. 53, at 7 n.2). The Maryland Comptroller agrees with BONY that the Subject DOT is senior to the state tax liens against Mr. Ashley, pursuant to the doctrines of equitable subrogation and after-acquired property, and that the state tax liens against Mrs. Ashley did not attach to the Property because she had previously conveyed away her interest at the time of their filing. (*See* ECF No. 32). The United States opposed the joint motion, but represented that the Maryland Comptroller's concession of lien priority did not affect the lien priority of the United States. (ECF No. 52, at 3).

Plaintiff previously filed a motion for consent judgment as to Mr. and Mrs. Ashley (ECF No. 28), which the United States opposed (ECF No. 31). The consent motion, *inter alia*, would have provided that the Subject DOT is equitably subrogated to the position and priority of the Prior DOT and the CitiFinancial DOT, and that Mr. and Mrs. Ashley intended for the Subject DOT to be a first-priority deed of trust against the Property. (ECF No. 28-1, at 2). On March 14, 2016, the court denied the consent motion without prejudice to its renewal because its resolution would have affected the priority of the United States' tax liens. Mr. and Mrs. Ashley answered the amended complaint on June 23. (ECF No. 72). In their answer, they request that the court enter judgment in favor of BONY establishing that the Subject DOT is the first-priority lien on the property. (*Id.*). The United States answered the amended complaint on December 21, 2015 (ECF No. 47). In a later opinion, the court purported to resolve some of the additional discrete issues. (ECF No. 73). In its motion for entry of final judgment, BONY recites that the Ashleys and the Comptroller of Maryland consent to the requested relief. (ECF No. 79).

**II. Standard of Review**

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause

> lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Subject matter jurisdiction can be challenged for the reason that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In such a situation, the complaint should be dismissed if it does not allege sufficient facts to invoke subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

**III. Analysis**

The basis for Plaintiff's assertion of federal jurisdiction remains unclear. Initially it appeared to be based on the presence of a federal defendant. Now, however, Plaintiff may be claiming federal question jurisdiction.[3]

Subject matter jurisdiction over suits in which the United States is a defendant is outlined in 28 U.S.C. § 1346. Subsection 1346(f) provides jurisdiction for a quiet title

---

[3] There is no assertion of jurisdiction based on diversity of citizenship.

action brought pursuant to 28 U.S.C. § 2409a. But Plaintiff does not assert a claim under § 2409a, invoking instead § 2410. Thus, Plaintiff has not established jurisdiction based on the presence of a federal defendant.

Subject matter jurisdiction based on the presence of a federal question, under 28 U.S.C. § 1331, applies to an action arising under the Constitution, laws, or treaties of the United States. In order to prove subject matter jurisdiction and pursue this case, Plaintiff must show both a viable cause of action and that the United States has waived sovereign immunity for that action. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

The statute on which Plaintiff relies is 28 U.S.C. § 2410. 28 U.S.C. § 2410(a)(1) states that "the United States may be named a party in any civil action or suit in any district court . . . (1) to quiet title to . . . any real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a). Pursuant to this statute, the United States has waived its sovereign immunity for quiet title actions, and a party can bring suit against it in an appropriate action. Plaintiff initiated this suit in federal court, presumably asserting that it may bring a quiet title action under federal law even though it identifies no federal law providing for such an action. (An attempt to assert a Maryland

quiet title action, even were there diversity among the appropriate parties, would fail because it is pellucid that under Maryland law, quiet title actions may only be brought by parties in possession, either actual or constructive. Md. Code Ann, Real Prop. § 14-108; *Washington Mut. Bank v. Homan*, 974 Md. App. 372, 403-06 (2009). Plaintiff has neither.)

Assuming Plaintiff could bring an action under federal law for quiet title, the question remains whether this action falls within the scope of the waiver of sovereign immunity for quiet title actions. Plaintiff argues that the waiver should be broadly construed "to permit parties with an interest in real property to resolve disputes concerning the priority of government tax liens." (ECF No. 93, at 6). The United States argues that a party cannot bring a quiet title action under 28 U.S.C. § 2410(a)(1) "unless it has actual or constructive possession of the property[.]" (ECF No. 88, at 4).

There is a dearth of authority applying and interpreting that statute. In 1960, the Supreme Court of the United States resolved a pair of cases, one of which involved § 2410, to answer the question of whether a federal tax lien was extinguished by state proceedings to which the United States was not a party. *United States v. Brosnan*, 363 U.S. 237 (1960). In addressing that question, the Court observed:

> Federal tax liens are wholly creatures of federal statute. Detailed provisions govern their creation, continuance, validity, and release. Consequently, matters directly affecting the nature or operation of such liens are federal questions, regardless of whether the federal statutory scheme specifically deals with them or not.

*Brosnan*, 363 U.S. at 240. As noted, two separate suits were before the Court in *Brosnan*, and one, no. 183, involved a suit by a mortgagee against the Government under 28 U.S.C. § 2410 to quiet title. The proceedings were that:

> California real and personal properties, subject to a deed of trust and two chattel mortgages, were sold by the trustee-mortgagee pursuant to powers of sale contained in the respective instruments. The United States received no actual notice of the sale. Thereafter, the mortgagee, which had bought in at the sale, brought this suit against the Government under 28 U.S.C. § 2410, to quiet its title, claiming that the exercise of the powers of sale had effectively extinguished the federal tax lien.

The Court described § 2410 as follows:

> In 1931, Congress . . . passed the predecessor of 28 U.S.C. § 2410, which gives a private lienor the right to name the United States a party in any action or suit to foreclose a mortgage or lien or to quiet title to property on which the United States claims any kind of mortgage or lien, whether or not a tax lien. The action can be brought in a state court, but is removable to a federal court.

Ultimately, the Supreme Court sent the case back to the lower courts to determine the effect the non-judicial sale had on the

junior tax liens. Obviously, the existence and priority of federal liens are questions that involve the interplay of federal and state law. There, though, the plaintiff was the purchaser and was presumably in possession of the property. The situation here is different.

Although not crystal clear, the United States Court of Appeals for the Fourth Circuit appears to have ruled that possession is a prerequisite to bringing a federal quiet title action. In *Kasdon v. G.W. Zierden Landscaping, Inc.*, 541 F.Supp. 991, 992 (D.Md. 1982), the plaintiffs purchased real properties at a tax sale conducted by county officials. The plaintiffs brought suit against the United States, among other defendants, to foreclose all equities of redemption. The plaintiffs argued that their action constituted an action for quiet title for which the United States had waived sovereign immunity. The district court noted that "[u]sually, a plaintiff bringing a quiet title action must have possession of the property which is the subject of the action." *Id.* at 994 (citing 74 C.J.S., Quieting Title § 27 (1951)). "[I]n the face of near-unanimous judicial authority requiring a quiet title action to be brought by a plaintiff-in-possession, it is unlikely that the Congress intended, when it passed § 2410, to permit a quiet title action by a plaintiff who was not in possession, actual or constructive." *Id.* Accordingly, the

court determined that the plaintiffs could not bring a quiet title action as contemplated under 28 U.S.C. § 2410(a)(1). *Id.* at 994-95.

The Fourth Circuit affirmed the district court. It stated:

> The [district] court concluded that Congress could not have intended to include the involved type of action within the meaning of quiet title action in § 2410(a)(1) principally because the plaintiffs did not have actual or constructive possession of the properties. . . . We agree with the conclusion reached by the district court.

*Kasdon v. United States*, 707 F.2d 820, 823 (4th Cir. 1983). Thus, the law of this circuit requires a person bringing a quiet title action be in possession of the property. Because Plaintiff does not allege to be in possession, it may not bring a quiet title action and that claim must be dismissed.

Even if, as Plaintiff contends, the Fourth Circuit had not already decided this issue, the term "quiet title" is best interpreted to require a plaintiff to be in possession of a property to institute an action. "It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Sekhar v. United States*, 570 U.S. 729, 732 (2013) (internal quotation marks omitted). Here, Plaintiff points to no indication that Congress intended to depart from the established practice for a quiet title action. Indeed, "[t]he

12

quiet title provision was inserted by amendment to the predecessor statute, following a recommendation by the Attorney General of the United States (future Justice Jackson)." *Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1231-32 (1st Cir. 1996). This amendment incorporated terms of art from the law of property, "[a]nd where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken[.]" *Morissette v. United States*, 342 U.S. 246, 250 (1952) (Jackson, J.). Not only does the statute lack a contrary indication, but the presumption that a term receives its common law definition would seem particularly justified when the enactment was done at the behest of the then-Attorney General and a future Supreme Court Justice. Moreover, Congress would have been aware of the requirements for a quiet title action under federal common law. In using a term with an established meaning in federal and state common law, Congress intended to incorporate that meaning.

Generally, "[a] common-law quiet title action requires proof that the plaintiff is in possession, while an ejectment action requires proof that the complainant is illegally being kept from possession[.]" 65 Am. Jur. 2d Quieting Title § 2

(2018).  Under federal common law, a quiet title suit required a person be in possession of property to bring a suit to quiet title, *Twist v. Prairie Oil & Gas Co.*, 274 U.S. 684, 692 (1927),[4] whereas an ejectment action could be brought by a person out of possession to determine their interest in the property. *United States v.* Wilson, 118 U.S. 86, 89 (1886).  Congress only allowed for actions for "quiet title" where "[t]he plaintiff must aver . . . possession[.]"  74 C.J.S., Quieting Title § 71 (2018).  Congress did not allow for ejectment actions.  Because Congress chose to waive sovereign immunity only as to actions in quiet title and not as to ejectment actions and because Plaintiff is not in possession of the property as required for a quiet title suit pursuant to 28 U.S.C. § 2410(a)(1), there is no federal cause of action and thus no subject matter jurisdiction over Plaintiff's claim.

Plaintiff presents a litany of other arguments to avoid this conclusion.  Plaintiff first argues that the legislative intent and purpose weigh in favor of broadly construing 28 U.S.C. § 2410(a)(1).  (ECF No. 93, at 2-3, 12-13).  Even if true, "[a] waiver of sovereign immunity cannot be implied but must be unequivocally expressed."  *Irwin v. Dep't of Veterans*

---

[4] Federal courts did recognize exceptions, such as waiver, to the requirement that a person be in possession because these exceptions did not go "to the power of the court as a federal court, but to the merits."  *Twist*, 274 U.S. at 692.

14

*Affairs*, 498 U.S. 89, 95 (1990) (internal quotation marks omitted). Plaintiff's arguments to expand the waiver of sovereign immunity based on legislative history and policy lack force because "the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires[.]" *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) (internal citations, quotation marks, and alterations omitted).

Plaintiff next argues that courts outside the Fourth Circuit have allowed quiet title actions against the United States from persons not in possession. (ECF No. 93, at 3-7). The Fourth Circuit has already decided that a quiet title action requires a person be in possession, *Kasdon*, 707 F.2d at 823, and, even if it had not, Plaintiff's citations to out-of-circuit authority that afford a "broad construction" to a waiver of sovereign immunity are unpersuasive. *Progressive*, 29 F.3d at 1233.

Plaintiff also asserts that the United States has been inconsistent in asserting its sovereign immunity and its "position is therefore untenable." (ECF No. 93, at 7). Regardless of the United States' litigation conduct, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

Plaintiff lastly asserts that under Maryland law, equitable subrogation should be treated the same as a quiet title. (ECF No. 93, at 9). As explained *supra*, jurisdiction is claimed based on the presence of a federal question, not diversity, and, therefore, how Maryland treats an equitable subrogation claim is irrelevant. The question is whether Plaintiff's action meets the federal definition for a quiet title action which it does not. Without a federal question on which to base jurisdiction, the court cannot exercise supplemental jurisdiction over any other claim.

In sum, Plaintiff Bank of New York Mellon has failed to plead facts which establish its cause of action falls within the waiver of sovereign immunity for quiet title actions pursuant to 28 U.S.C. § 2410(a)(1), and, therefore, the case will be dismissed for lack of jurisdiction. As Plaintiff is out-of-possession, no amendment could cure the dismissal, and, therefore, the case is dismissed with prejudice.

## IV. Conclusion

For the foregoing reasons, the case will be dismissed. A separate order will follow.

                                         /s/
                               DEBORAH K. CHASANOW
                               United States District Judge